1

2

3

4                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
5                                    AT SEATTLE

6    3BA PROPERTIES LLC, et al.,

7                          Plaintiffs,
                                                    C13-979 TSZ
8            v.
                                                    ORDER
9    LARRY CLAUNCH, et al.,

10                         Defendants.

11          THIS MATTER comes before the Court on (i) a motion to dismiss, docket no. 62,

12   brought by defendants Larry Claunch, 3BA International LLC ("3BA International"), and

13   TenMain Investments, LLC ("TenMain"); (ii) a motion to extend certain deadlines,

14   docket no. 64, brought by Claunch, 3BA International, and TenMain; and (iii) a motion

15   brought by plaintiffs, docket no. 71, to compel defendants TenMain, Larry Claunch

16   Living Trust UTA (the "Claunch Trust"), and One Hundred Sands, LLC ("One Hundred

17   Sands") to waive service of summons.  Having reviewed all papers[1] filed in support of,

18   and in opposition to, each motion, the Court enters the following order.

19   _____

20   [1] Plaintiffs contend that the motion to dismiss was not timely filed.  Defendants argue that plaintiffs'
     response to the motion to dismiss was one day late and should not be considered.  As to Claunch, the
21   Court does not agree that the motion to dismiss was tardy, see infra note 5, and to the extent that a motion
     to dismiss on behalf of 3BA International or TenMain should have been presented earlier, the Court sua
22   sponte GRANTS an extension.  The Court likewise treats plaintiffs' response to the motion to dismiss as
     timely filed.

23

ORDER - 1

**Discussion**

The Court has previously issued two Orders, docket nos. 41 and 60, setting forth the underlying facts of this case.  As a result of the Court's prior rulings, plaintiffs' claims against seven defendants[2] have been dismissed with prejudice.  Several other defendants have not yet appeared, presumably because they have not been served.  _See_ Minute Order (docket no. 39) (denying plaintiffs' motion for leave to effect service by mail).  Claunch, 3BA International, and TenMain are the only remaining defendants on whose behalf counsel has appeared.  Claunch seeks dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(5), for insufficient service of process.  In addition, all three of these defendants contend, under Federal Rule of Civil Procedure 12(b)(6), that plaintiffs' claims against them should be dismissed because they are either time barred or otherwise not cognizable.[3]

The 62-page Second Amended Complaint contains the following claims against Claunch and/or 3BA International:  (i) breach of contract; (ii) trespass onto land and/or chattels; (iii) misappropriation of trade secrets; (iv) misrepresentation and/or fraud; (v) violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120; (vi) breach of fiduciary duty; (vii) conspiracy in violation of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985;

---

[2] These entities are either attorneys or law firms, specifically Michael Reynvaan, Perkins Coie LLP, Stoel Rives LLP, Brinette Bobb Rounds, Oak Street Law Group, PLLC, Gloria Nagler, and Nagler & Malaier P.S.

[3] A complaint might be lacking for one of two reasons:  (i) absence of a cognizable legal theory; or (ii) insufficient facts to support a cognizable legal claim.  _Robertson v. Dean Witter Reynolds, Inc._, 749 F.2d 530, 534 (9th Cir. 1984).  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 558 (2007).

(viii) violation of 18 U.S.C. § 892; and (ix) violation of the Racketeer Influenced and

Corrupt Organizations provisions of the Organized Crime Control Act of 1970, Pub. L.

91-452 (the "RICO Act").  2d Am. Compl. at 32-60 (docket no. 46).  Plaintiffs have

asserted no claim and include no prayer for relief against TenMain.  *Id.* at 32-61.  The

Clerk will therefore be directed to terminate TenMain as a defendant, effective nunc pro

tunc to the date that the Second Amended Complaint was filed, *i.e.*, December 3, 2013.[4]

A.      **Insufficient Service of Process**

        Claunch apparently resides in the Republic of Fiji.  Lloyd Decl. (docket no. 31-2).

Plaintiffs did not serve Claunch in the manner prescribed in Federal Rule of Civil

Procedure 4(f) for serving individuals in foreign countries.  Instead, plaintiffs arranged

for a Polk County Deputy Sheriff to deliver the summons and complaint to Mark Paschke

at 12900 Beck Road in Dallas, Oregon.  Sheriff's Affidavit (docket no. 11).  Paschke

resides at 12910 Beck Road, in a house owned by Claunch.  Paschke Decl. at ¶¶ 2 & 4

(docket no. 63).  Paschke provides maintenance services for the adjacent property located

at 12900 Beck Road, which is also owned by Claunch and which is used primarily for

farming purposes.  *Id.* at ¶ 3.  Claunch does not reside at either location (12900 or 12910

Beck Road), and he seldom visits.  *Id.* at ¶¶ 5 & 7.  Paschke has no responsibility for

---

[4] With regard to TenMain, plaintiffs' motion to compel waiver of service of summons is STRICKEN as moot.  Not only does the Second Amended Complaint contain no allegations against TenMain, rendering service unnecessary, but TenMain was already served via its registered agent, Oak Street Law Group, PLLC.  *See* Resp. at 2 n.1 (docket no. 72); *see also* http://www.sos.wa.gov/corps/search_advanced.aspx (indicating that TenMain is an active Washington limited liability company and providing the name and address of its registered agent).

1   handling Claunch's mail or dealing with Claunch's business matters, other than

2   maintaining the farm.  _Id._ at ¶ 6.

3       Because Claunch resides outside the United States, delivering the summons and

4   complaint to Paschke did not constitute proper service.  _See_ Fed. R. Civ. P. 4(f).  Even if,

5   however, 12900 Beck Road was Claunch's "dwelling or usual place of abode," handing

6   the summons and complaint to Paschke would be insufficient because Paschke does not

7   reside at that location and is not Claunch's agent within the meaning of Federal Rule of

8   Civil Procedure 4(e)(2)(C).  _See_ Fed. R. Civ. P. 4(e); _see also_ RCW 4.28.080(15);

9   _compare_ Ore. R. Civ. P. 7(D).  The Sheriff's Affidavit of Service filed by plaintiffs itself

10  indicates that Paschke is merely a caretaker of the property, and not the requisite resident

11  or agent.  Plaintiffs having failed to properly serve Claunch, the Court lacks personal

12  jurisdiction over him.  _See Mason v. Genisco Tech. Corp._, 960 F.2d 849, 851 (9th Cir.

13  1992); _Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc._, 840 F.2d 685, 688

14  (9th Cir. 1988).

15      The usual 120-day deadline for effecting service does not apply when the

16  defendant is not within a judicial district of the United States, Fed. R. Civ. P. 4(m), and

17  plaintiffs might yet timely serve Claunch.  The Court must therefore assess whether to

18  exercise its discretion to dismiss plaintiffs' claims against Claunch without prejudice or

19  retain the action and allow plaintiffs leave to attempt to effect proper service.[5]  _See_

20

21  _____

22  [5] Plaintiffs contend that Claunch's Rule 12(b)(5) motion is untimely.  They are incorrect.  In response to
    the original complaint, Claunch preserved the defense of defective service.  _See_ Answer at ¶ 2.2 (docket
    no. 14); _see also_ Fed. R. Civ. P. 12(h)(1)(B)(ii).  Plaintiffs subsequently amended their complaint, but

23

ORDER - 4

1    _Reyes v. Fircrest Sch._, 2012 WL 3144915 at *3 (W.D. Wash. Aug. 1, 2012); _see also_

2    _Romero v. Washoe County_, 2013 WL 1955887 at *1 (D. Nev. May 10, 2013) ("In

3    granting a Rule 12(b)(5) motion, the court may either dismiss the action without

4    prejudice or retain the action and permit the plaintiff to cure the defects.").  Such decision

5    depends on the potential merits of plaintiffs' claims and whether further proceedings are

6    warranted in this case.  The Court therefore turns to the Rule 12(b)(6) arguments

7    presented by Claunch and 3BA International.

8    **B.     Federal Claims**

9         **1.     Fraud in Procuring Trademark Registration**

10        Section 38 of the Lanham Act provides that "[a]ny person who shall procure

11   registration in the Patent and Trademark Office of a mark by a false or fraudulent

12   declaration or representation, oral or in writing, or by any false means, shall be liable in a

13   civil action by any person injured thereby for any damages sustained in consequence

14   thereof."  15 U.S.C. § 1120.  The Lanham Act contains no express statute of limitations,

15   and the Court must therefore look to state law concerning analogous types of actions.  _See_

16   _Beauty Time, Inc. v. VU Skin Sys., Inc._, 118 F.3d 140, 143 (3d Cir. 1997).  A claim under

17   § 38 of the Lanham Act sounds in fraud, and is therefore subject to Washington's three-

18   year limitation period for fraud claims.  _See id._ (citing _Official Airline Guides, Inc. v._

19

20   failed to serve the operative pleading on Claunch.  _See_ Cert. of Serv. (docket no. 47) (relying solely on
21   electronic notification to Claunch's attorney).  Because Claunch was not properly served with either the
     original complaint or the Second Amended Complaint, the 21-day period within which he would have
22   been required to present a motion pursuant to Rule 12(b) never began to run.  _See_ Fed. R. Civ. P. 12(a);
     _see also_ Fed. R. Civ. P. 15(a)(3).

23

ORDER - 5

1  <u>Goss</u>, 6 F.3d 1385, 1395 (9th Cir. 1993) (applying Oregon's two-year limitation period));

2  <u>see</u> RCW 4.16.080(4).

3        The Second Amended Complaint is less than clear concerning the facts underlying

4  the claim pursuant to § 38 of the Lanham Act.  The records of the United States Patent

5  and Trademark Office ("PTO") indicate that 3BA International holds two registrations

6  for the mark "3BA," one related to clothing and the other in the field of "entertainment in

7  the nature of professional basketball games."  Registration Nos. 2,499,830 & 2,940,640

8  (<u>see</u> Trademark Electronic Search System at http://tmsearch.uspto.gov).  The dates of

9  registration are October 23, 2001, and April 12, 2005, respectively.  <u>Id.</u>  The original

10 owner of the registrations was plaintiff Kevin M. LuBahn.  <u>Id.</u>  Plaintiffs are presumably

11 not asserting that LuBahn engaged in fraud to obtain the registrations.  Thus, the acts on

12 which plaintiffs base their Lanham Act claim must relate to the assignment of the marks

13 recorded with the PTO on December 4, 2008.  Such assignment, from LuBahn to

14 Claunch,[6] was accomplished by filing a copy of a Bankruptcy Court order entered on

15 September 23, 2008.  <u>See</u> Reel 3899, Frames 586-599 (http://assignments.uspto.gov).  On

16 April 27, 2009, the bankruptcy trustee filed a report indicating that the sale to Claunch of

17 LuBahn's intellectual property had been completed.[7]  <u>See</u> Order at 3 (docket no. 60).

18

19 _____

20 [6] Claunch subsequently assigned the registrations to 3BA International.  <u>See</u> Reel 4024, Frames 515-518 (http://assignments.uspto.gov).  Such assignment did not affect LuBahn's interest in the registrations and therefore cannot be a basis for plaintiffs' claim under § 38 of the Lanham Act.

21 [7] Claunch also purchased two registered copyrights for the 3BA logo and a text setting forth the rules of the game, Registration Nos. VA 1-037-004 and TX 5-316-689, respectively, and three registered domain names, 3BA.com, 3BA.net, and 3BA.org.  <u>See</u> Order at ¶ 3 (E.D. Wash. Bankr. 07-1877, docket no. 35 at

22 3).  Plaintiffs make no separate federal claim for fraud relating to Claunch's acquisition of these assets.

23

ORDER - 6

1    This action commenced on June 6, 2013.  _See id._ at 4 (citing Order at 7 & n.4

2    (docket no. 41)).  Thus, to pursue the Lanham Act claim, plaintiffs must establish that

3    they did not know and could not have known prior to June 6, 2010, the facts on which the

4    claim under § 38 is based.  _E.g._, _McLeod v. Nw. Alloys, Inc._, 90 Wn. App. 30, 36, 969

5    P.2d 1066 (1998) ("[A] cause of action accrues when the claimant knew or should have

6    known the essential elements of the cause of action. . . .  The cause of action accrues

7    when the claimant knows or should know the relevant facts, 'whether or not the plaintiff

8    also knows that these facts are enough to establish a legal cause of action.'").  Plaintiffs

9    fail to do so.  They had all relevant facts relating to the assignment of the trademark and

10   service mark registrations at issue by April 27, 2009, at the latest, when the bankruptcy

11   trustee filed the related report, and as early as September 23, 2008, when the Bankruptcy

12   Court entered its order, or December 4, 2008, when the assignment was recorded with the

13   PTO.  Plaintiffs' claim under § 38 of the Lanham Act is time barred.

14        **2.    Ku Klux Klan Act of 1871**

15        Plaintiffs attempt to invoke 42 U.S.C. § 1985, which provides, in relevant part,

16   that an action may be asserted against a person who conspires to obstruct "the due course

17   of justice," with the intent to deny a citizen of the equal protection of the laws or who

18   conspires "for the purpose of depriving, either directly or indirectly, any person or class

19   of persons of the equal protection of the laws, or of equal privileges and immunities

20   under the laws."  42 U.S.C. §§ 1985(2) & (3).  To establish a conspiracy claim under

21   § 1985 against a private entity, a plaintiff must show _inter alia_ that (i) a racial or other

22   class-based invidious discriminatory animus motivated the conspirators' action, and

23

ORDER - 7

1  (ii) the conspiracy was aimed at interfering with rights that are protected against private,

2  as well as official or governmental, encroachment. _Butler v. Elle_, 281 F.3d 1014, 1028

3  (9th Cir. 2002) (citing _Bray v. Alexandria Women's Health Clinic_, 506 U.S. 263, 267-68

4  (1993)).  In the context of actions against private conspirators, the Supreme Court has

5  thus far recognized only two rights protected under § 1985, namely the right to be free

6  from involuntary servitude and the right to engage in interstate travel.  _See_ _Brown v._

7  _Philip Morris Inc._, 250 F.3d 789, 805 (3d Cir. 2001).

8          In the Second Amended Complaint, plaintiffs fail to allege any racial or class-

9  based discriminatory animus.  They indicate merely that Claunch and his alleged co-

10  conspirators sought to acquire LuBahn's intellectual property without an arms-length

11  negotiation,[8] thereby depriving LuBahn of his rights under the Bankruptcy Code, and

12  extorted the intellectual property from LuBahn by advising him that he could go to jail if

13  he was found to have concealed assets from the bankruptcy trustee.  _See_ 2d Am. Compl.,

14  11th Cause of Action, ¶¶ 3 & 4 (docket no. 46 at 45); Letter to LuBahn from Nagler &

15  Associates (docket no. 68-1 at 3).[9]

16

17

18  [8] The Court notes that, in moving for approval to sell LuBahn's intellectual property to Claunch, the Chapter 7 Trustee indicated that the sale had been "negotiated in good faith," "at arms length," and "without collusion."  Motion at ¶ 19 (E.D. Wash. Bankr. 07-1877, docket no. 27 at 5).  The purchase price

19  of $5,000 exceeded the estimated aggregate fair market value of the intellectual property, namely $1,509, and a "private sale" allowed the debtor to "realize the full value of the Property without undertaking substantial time and expenditures attempting to obtain a higher purchase price."  _Id._ at ¶¶ 18-19.

20  [9] In response to the pending motion to dismiss, plaintiffs have submitted various materials outside the pleadings, including the declarations of LuBahn and plaintiff Brenda Beamer Ford.  The Court has

21  considered these papers, and has taken judicial notice of public records like those on file with the PTO, _see_ Fed. R. Evid. 201 & 803(14), only to the extent that they clarify the nature and scope of plaintiffs'

22  claims, and not for the purpose of assessing whether plaintiffs can prove the facts alleged in the Second Amended Complaint.  The Court therefore DECLINES to convert the pending motion to dismiss into a

23

1      Even if these assertions were true, they would not establish the type of class-based

2   discriminatory animus required to pursue a claim under § 1985.  *See* *Butler*, 281 F.3d at

3   1028 (indicating that, although the Supreme Court has not yet defined the parameters of a

4   "class" other than race, "the term unquestionably connotes something more than a group

5   of individuals who share a desire to engage in conduct that the § 1985(3) defendant

6   disfavors," and cautioning that "§ 1985(3) should 'not be extended to every class which

7   the artful pleader can contrive'").  Moreover, these allegations do not involve the type of

8   rights as to which a violation may be redressed in an action under § 1985 against private

9   actors.  *See* *Brown*, 250 F.3d at 805 (reasoning that, because property and contract rights

10  are "statutorily enacted, rather than of purely constitutional provenance," they "cannot be

11  vindicated under § 1985").  Plaintiffs' claim under § 1985 is not cognizable.

12      **3.      Extortionate Extension of Credit**

13      Plaintiffs' claim under 18 U.S.C. § 892, which criminalizes the making of, or

14  conspiring to make, an extortionate extension of credit, is not cognizable because the

15  statute creates no private right of action.  *See* *Bey v. Nissan Motors Acceptance Corp.*,

16  1992 WL 174730 (E.D. Pa. July 21, 1992), *aff'd*, 983 F.2d 1049 (3d Cir. 1992).  In

17  addition, the Second Amended Complaint does not plead the requisite facts to establish

18  an extortionate extension of credit, which requires an understanding between the creditor

19  and debtor at issue that delay in making or failure to make repayment could result in the

20  ───────────────────────────────────────────

21  motion for summary judgment.  *See* Fed. R. Civ. P. 12(d); *see also* *Allen v. United Fin. Mortg. Corp.*, 660
    F. Supp. 2d 1089, 1093 (N.D. Cal. 2009); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp.
22  2d 1142, 1161 (S.D. Cal. 2008) (in deciding a Rule 12(b)(6) motion, a court may consider facts that are
    subject to judicial notice).

23

ORDER - 9

use of violence or other criminal means of causing harm.  <u>See</u> 18 U.S.C. § 891(6).  The

Second Amended Complaint alleges that Claunch and/or others threatened LuBahn that

he could go to jail if he was found to have concealed assets from the bankruptcy trustee.

Advice concerning the legal consequences of wrongdoing does not rise to the level of

"violence or other criminal means."  Plaintiffs' claim under § 892 will be dismissed with

prejudice.

### 4.   <u>RICO Claim</u>

When this litigation commenced, plaintiffs' RICO claim was the only stated basis

for subject-matter jurisdiction; all other claims were pleaded under state law and,

although some defendants are domiciled outside the State of Washington, complete

diversity does not exist.  <u>See</u> Compl. (docket no. 1); <u>see also</u> 28 U.S.C. §§ 1331 & 1332.

As a result, the Court directed plaintiffs to file a RICO statement.  <u>See</u> Minute Order

(docket no. 42).  Before submitting the RICO statement, however, plaintiffs filed the

Second Amended Complaint, thereby adding the three other federal claims discussed

earlier.  Having concluded that the claim under Section 38 of the Lanham Act is time

barred and the claims under 42 U.S.C. § 1985 and 18 U.S.C. § 892 are not cognizable, the

Court must now undertake a substantive review of the RICO statement to determine

whether subject-matter jurisdiction exists.

RICO provides a private right of action for any person "injured in his business or

property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  For purposes of

this case, the relevant provision of § 1962 prohibits a person "employed by or associated

with any enterprise engaged in, or the activities of which affect, interstate or foreign

ORDER - 10

1  commerce, to conduct or participate, directly or indirectly, in the conduct of such

2  enterprise's affairs through a pattern of racketeering activity or collection of unlawful

3  debt."  18 U.S.C. § 1962(c); _see also_ RICO Stmt. at ¶ 1 (docket no. 48) (indicating that

4  the only violation plaintiffs allege is of § 1962(c)).  Racketeering activity is statutorily

5  defined to include certain felonies under state law and certain indictable acts or offenses

6  under federal law.  18 U.S.C. § 1961(1).  A "pattern of racketeering activity" requires, at

7  a minimum, two predicate acts of racketeering, occurring within ten years of each other,

8  with at least one act taking place after October 15, 1970.  18 U.S.C. § 1961(5).  To form a

9  "pattern," the predicate acts must be both "related" and "continuous."  _H.J. Inc. v. Nw_

10  _Bell Tel. Co._, 492 U.S. 229 (1989); _Allwaste, Inc. v. Hecht_, 65 F.3d 1523, 1527 (9th Cir.

11  1995).

12        In their RICO Statement, docket no. 48, plaintiffs indicate that they are relying

13  _inter alia_ on predicate acts directed at Spokane Hoopfest Association ("SHA"), William

14  Steven Kaczaraba, the Snoqualmie Tribe (the "Tribe"), and the Republic of Fiji ("Fiji").

15  As to these predicate acts, plaintiffs do not have standing to pursue a RICO claim.  _See_

16  _Reddy v. Litton Indus., Inc._, 912 F.2d 291 (9th Cir. 1990); _see also_ _Hill v. Opus Corp._,

17  841 F. Supp. 2d 1070 (C.D. Cal. 2011).  Plaintiffs have not pleaded and cannot show the

18  requisite causal connection between the alleged acts targeted at other entities and a

19  business or property injury suffered by plaintiffs.  _See_ _Reddy_, 912 F.2d at 294 ("[W]e

20  hold that Reddy lacks standing to sue under § 1962(c) because the injury he suffered was

21  the result of his alleged wrongful termination and was not caused by predicate RICO

22  acts.").  To the extent that SHA, Kaczaraba, the Tribe, or Fiji were "direct victims" of

23

1  any predicate RICO acts perpetrated by Claunch and/or 3BA International, the applicable

2  standing doctrines envision that they, and not plaintiffs, are the ones to "be counted on to

3  vindicate the law as private attorneys general."  *Hill*, 841 F. Supp. 2d at 1098.

4          The predicate acts outlined in plaintiffs' RICO Statement that were allegedly

5  aimed at plaintiffs LuBahn or Ford are as follows:  (i) e-mails and telephone calls

6  between Claunch and Ford concerning allegedly fraudulent loans and false promises to

7  repay $750,000 relating to a resort project in Fiji; (ii) correspondence between LuBahn

8  and his bankruptcy attorney, who was paid by Claunch, *see* Order at 2 (docket no. 60),

9  threatening LuBahn that he could be jailed if he was found to have concealed assets from

10 the bankruptcy trustee; and (iii) telephone calls between Claunch and LuBahn regarding

11 allegedly fraudulent promises to make LuBahn a member of 3BA International, with a

12 50% interest, to induce LuBahn to continue his efforts to establish a professional three-

13 on-three basketball league.  *See* RICO Stmt. at ¶¶ 5-7 (docket no. 48 at 4-5).  The RICO

14 Statement does not provide any dates for these events, but the documents submitted along

15 with plaintiffs' response to the pending motion to dismiss indicate that (i) as a partner in a

16 project to develop the Nukudrau Island Resort in Fiji, Ford's share of the proceeds was

17 approximately $750,000, payment of which was deferred in 2007; Claunch signed a letter

18 on April 13, 2010, docket no. 68-1 at 15, indicating that Ford was projected to be paid in

19 January 2011; (ii) the letter in which the firm of Nagler & Associates advised LuBahn

20 that "if the U.S. Trustee or the Chapter 7 Trustee believes that you concealed the assets

21 you are about to disclose, the penalties are harsh:  loss of discharge, possible fine and

22 imprisonment, etc.," docket no. 68-1 at 3, was dated December 18, 2007; and (iii) drafts

23

1   of an amended limited liability company agreement for 3BA International and an

2   employment agreement, making LuBahn a 50% member of, and the Chief Operating

3   Officer for, 3BA International, were circulated to LuBahn and Claunch on July 3, 2008,

4   docket no. 68-1 at 13.

5          As argued by Claunch and 3BA International, plaintiffs' RICO claim appears to be

6   time barred.  The deferment of payment (or "false promise" to pay $750,000) to Ford

7   occurred in 2007, the advice to LuBahn about potential penalties in connection with the

8   bankruptcy proceedings was conveyed in December 2007, and the conversations between

9   LuBahn and Claunch concerning LuBahn becoming a member of 3BA International must

10  have transpired before July 2008, when an attorney attempted to memorialize whatever

11  agreement the two men had reached.  All of these alleged predicate acts occurred more

12  than four years before this suit was commenced on June 6, 2013.  _See_ _Agency Holding_

13  _Corp. v. Malley-Duff & Assocs., Inc._, 483 U.S. 143, 156 (1987) (adopting a four-year

14  limitation period for RICO claims).  To the extent, however, that plaintiffs might be

15  relying on Claunch's April 2010 letter as evidencing fraud aimed at Ford or on any

16  telephone calls between Claunch and LuBahn after June 6, 2009, and before April 29,

17  2010, when LuBahn was discharged as manager of 3BA International, _see_ Order at 3

18  (docket no. 41), the Court is reluctant to base its ruling on the statute of limitations.

19         Instead, the Court concludes that plaintiffs have not asserted the requisite "pattern

20  of racketeering activity."  Plaintiffs essentially rely on two acts of alleged fraud

21  accomplished via mail or wire, _see_ 18 U.S.C. § 1961(1) (citing 18 U.S.C. §§ 1341 (mail

22  fraud) & 1343 (wire fraud)), and one act of alleged extortion, _see_ _id._ ("racketeering

23

ORDER - 13

1  activity" includes extortion chargeable as a felony under state law).  With regard to the

2  latter, plaintiffs fail to plead the type of "wrongful threat" required to establish extortion

3  under Washington law.  *See* RCW 9A.56.130; *see also* *State v. Pauling*, 149 Wn.2d 381,

4  69 P.3d 331 (2003).  As recognized in *Pauling*, for a verbal threat to give rise to liability

5  for extortion, it must fall outside the realm of protected speech.  149 Wn.2d at 388-91.

6  Here, the attorney's advice to LuBahn, about imprisonment being a possible ramification

7  if LuBahn was found to have concealed assets, had the requisite "nexus" to the services

8  the attorney anticipated providing to LuBahn, namely reopening LuBahn's bankruptcy

9  case to dispose of intellectual property that might not have previously been adequately

10  disclosed, to qualify as protected speech, and it cannot count as a predicate RICO act.

11  *See id.* at 390-91 (to be "wrongful," a threat must lack a nexus to its objective or a

12  plausible claim of right).

13  　　　　With regard to plaintiffs' reliance on mail and/or wire fraud, the Court agrees with

14  Claunch and 3BA International that plaintiffs have not satisfied the heightened pleading

15  standards set forth in Federal Rule of Civil Procedure 9(b).  *See* *Allwaste*, 65 F.3d at

16  1530-31 (holding that allegations of mail and wire fraud failed to meet the particularity

17  requirement of Rule 9(b), but remanding for the district court to consider whether to grant

18  leave to amend the complaint).  Moreover, the Court declines to permit plaintiffs to

19  attempt to cure these defects because, even if plaintiffs were to provide dates and further

20  details, they could not establish the necessary relatedness between the alleged predicates

21  to demonstrate a pattern of racketeering activity.  To be related, the predicate acts must

22  be more than isolated criminal acts; they must have "the same or similar purposes,

23

ORDER - 14

1   results, participants, victims, or methods of commission." _H.J. Inc._, 492 U.S. at 240

2   (quoting former 18 U.S.C. § 3575(e)); _Religious Tech. Ctr. v. Wollersheim_, 971 F.2d 364,

3   366 (9th Cir. 1992).

4         The remaining allegations of fraud do not satisfy this standard.  They involve

5   different objectives, results, victims, and methods.  The actions allegedly aimed at Ford

6   concerned a resort in Fiji, as to which payment for Ford's share of the proceeds was

7   deferred.  The conduct toward LuBahn related to the formation of a professional three-

8   on-three basketball league in the United States, in connection with which promises to

9   make LuBahn a 50% member of a limited liability company were unfulfilled.  Given

10  these disparate allegations, the Court is persuaded that the RICO claim as currently

11  pleaded lacks merit and that allowing plaintiffs to amend their RICO claim would be

12  futile.

13  **C.**   **Supplemental Claims**

14        Although all of plaintiffs' federal claims are subject to dismissal, the Court

15  continues to have subject-matter jurisdiction; the Court refuses to decline and will instead

16  exercise supplemental jurisdiction over the remaining state law claims.  _See_ 28 U.S.C.

17  §§ 1367(a) & (c).  Most of plaintiffs' state law claims, however, are time barred.  A

18  three-year limitation period applies to plaintiffs' claims of (i) misrepresentation and/or

19  fraud, (ii) misappropriation of trade secrets, and (iii) breach of fiduciary duty.  _See_

20  RCW 4.16.080(4) (fraud); RCW 19.108.060 (trade secret); _see also_ _Hudson v. Condon_,

21  101 Wn. App. 866, 874, 6 P.3d 615 (2000) (fiduciary duty).  These claims are premised

22  on LuBahn's and Claunch's interactions prior to April 29, 2010, when LuBahn was

23

ORDER - 15

1    terminated as manager of 3BA International.  The claims therefore accrued more than

2    three years before this action was commenced in June 2013, and they will be dismissed

3    with prejudice.

4           Plaintiffs have also pleaded two breach of contract claims:  one against Claunch

5    and 3BA International that is related to agreements with LuBahn, and the other against

6    Claunch, One Hundred Sands, and the Claunch Trust that arises from dealings with Ford.

7    In response to the pending motion to dismiss, plaintiffs insist that their claims are based

8    on written contracts and are therefore governed by a six-year statute of limitations.  *See*

9    RCW 4.16.040(1).  The Second Amended Complaint, however, does not identify with

10   particularity any written contracts or any specific terms alleged to have been breached.

11          Plaintiffs attached to their response a copy of 3BA International's limited liability

12   company agreement, docket no. 68-1 at 4-11, which was executed by Claunch and

13   LuBahn effective December 18, 2007.  Plaintiffs, however, cite no provision of the

14   agreement that Claunch and/or 3BA International supposedly breached.  The agreement

15   indicates that Claunch is the sole member of 3BA International, and designates Claunch

16   and LuBahn as co-managers of 3BA International.  Agr. at ¶¶ 1.1 & 2.1 (docket no. 68-1

17   at 4-5).  The agreement further provides that the member may remove a manager "at any

18   time with or without cause by written notice."  *Id.* at ¶ 2.1.  According to the agreement,

19   Claunch's approval is required for the admission of additional members.  *Id.* at ¶ 4.1.

20   Such admission would necessitate an amendment of the agreement to specify the voting

21   and management rights of members, the manner of allocating profits and losses among

22   members, and any restrictions on transferring members' interests.  *Id.* at ¶ 4.3.  Although

23

ORDER - 16

Claunch and LuBahn apparently discussed the possibility of LuBahn becoming an equal member of 3BA International, plaintiffs have proffered no evidence, and have not even pleaded, that the limited liability company agreement was modified accordingly.

In their breach of contract claims, plaintiffs do not allege that Claunch and/or 3BA International improperly removed LuBahn as manager. Indeed, the agreement itself envisioned that such removal could be accomplished unilaterally by Claunch for no reason. Rather, plaintiffs contend that Claunch breached promises to (i) make LuBahn "a full 50% owner" of 3BA International, (ii) pay LuBahn $200,000 "for the first 50% Claunch acquired from LuBahn," and (iii) terminate a promissory note and security agreement. 2d Am. Compl. at 33 (docket no. 46). The Court agrees with Claunch and 3BA International that the first two of these allegations are time barred. Plaintiffs have not alleged that such promises were ever memorialized in writing, and to the extent any oral promises were made to admit LuBahn as an additional member of 3BA International or to pay LuBahn $200,000, they would have been uttered before April 29, 2010, when LuBahn's tenure as manager ended and the parties' relationship became acrimonious, which was more than three years before this action commenced. _See_ RCW 4.16.080(3) (an action on an oral contract must be commenced within three years of accrual). With regard to a promissory note and security agreement, the contours of plaintiffs' breach of contract claim are difficult to decipher. What appears clear, however, is that the claim is asserted solely against Claunch, and does not involve 3BA International. _See_ 2d Am. Compl. at ¶¶ 52-54 (docket no. 46 at 8-9). Thus, as to 3BA International, the motion to dismiss the first breach of contract claim will be granted with prejudice.

ORDER - 17

1    With regard to Claunch, the Court concludes that the portion of the first breach of

2  contract claim premised on an alleged promissory note and security agreement, as well as

3  the second breach of contract claim and the claim for trespass onto land and/or chattels,

4  must be dismissed without prejudice.  In the second breach of contract claim, plaintiffs

5  allege that Ford is owed $750,000 for "engineering services," $400,000 relating to a

6  "bank loan," and $100,000 in restitution for a motor home that had been retrieved from

7  Ford's property by Carl Wenham, allegedly on Claunch's behalf.  2d Am. Compl. at 32,

8  34-35.  The trespass claim is also based on the removal of the motor home from Ford's

9  property.[10]  _Id._ at 35.  Because these claims are asserted either solely against Claunch or

10  against Claunch and other defendants who have not been served and have not appeared,

11  namely One Hundred Sands, the Claunch Trust, and Wenham,[11] the Court exercises its

12  discretion to dismiss these claims without prejudice for failure to effect proper service.

13  _See Romero_, 2013 WL 1955887; _Reyes_, 2012 WL 3144915; _see also_ Fed. R. Civ. P.

14  4(m).

15

16

---

17
18  [10] Wenham supposedly drove the motor home away from Ford's property on April 16, 2012, _id._ at 32, and thus, the trespass claim and the portion of the second contract claim involving the motor home were both brought within the three-year limitation period.  _See_ RCW 4.16.080(1), (2), & (3).

19  [11] With regard to co-defendants One Hundred Sands and the Claunch Trust, plaintiffs' motion to compel waiver of service of summons, docket no. 71, is DENIED.  Plaintiffs fail to cite any authority for the proposition that the Court may compel a defendant to waive service of summons, and the entire notion
20  runs contrary to due process jurisprudence; _see Seretse v. Andersen Corp._, 2013 WL 2434876 at *3 (D. Minn. June 4, 2013) ("a 'defendant[ ] ha[s] no obligation to waive [its] due process right to proper service'" (alterations in original, quoting _Adams v. AlliedSignal Gen. Aviation Avionics_, 74 F.3d 882, 886
21  (8th Cir. 1996)).  Plaintiffs have had ample opportunity to serve all defendants, and they have been on notice for quite some time that failure to do so could result in the dismissal of claims against defendants
22  on whom service has not been accomplished.  _See_ Minute Orders (docket nos. 39 & 61).

23

ORDER - 18

## Conclusion

For the foregoing reasons, the Court ORDERS:

(1)     The motion to dismiss, docket no. 62, brought by defendants Claunch, 3BA International, and TenMain is GRANTED as follows:

       (a)     Because no claim or prayer for relief has been pleaded against TenMain, the motion is GRANTED as to TenMain, and the Clerk is DIRECTED to terminate TenMain as a defendant, effective nunc pro tunc to the date that the Second Amended Complaint was filed, *i.e.*, December 3, 2013;

       (b)     With regard to plaintiffs' federal claims for (i) violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120; (ii) conspiracy in violation of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985; (iii) violation of 18 U.S.C. § 892; and (iv) violation of the Racketeer Influenced and Corrupt Organizations provisions of the Organized Crime Control Act of 1970, Pub. L. 91-452, the motion is GRANTED, and such federal claims are DISMISSED with prejudice as either time barred or not cognizable as a matter of law;

       (c)     With regard to plaintiffs' state law claims for (i) misrepresentation and/or fraud; (ii) misappropriation of trade secrets; and (iii) breach of fiduciary duty, the motion is GRANTED, and such state law claims are DISMISSED with prejudice as time barred;

       (d)     With regard to plaintiffs' state law claim for breach of contract based on alleged oral promises to make LuBahn a member of 3BA International and to

ORDER - 19

1    pay LuBahn $200,000, the motion is GRANTED, and such claim is DISMISSED

2    with prejudice as time barred; and

3         (e)    With regard to plaintiffs' state law claims for (i) breach of contract

4    premised on failure to terminate a promissory note and security agreement;

5    (ii) breach of contract related to amounts allegedly owed to Ford; and (iii) trespass

6    onto land and/or chattels, the motion is GRANTED in part, and such claims are

7    DISMISSED **without** prejudice for failure to effect proper service.

8         (2)    Plaintiffs' motion to compel waiver of service of summons, docket no. 71,

9    is STRICKEN in part as moot with regard to TenMain, _see supra_ note 4, and DENIED in

10   part as to One Hundred Sands and the Claunch Trust, _see supra_ note 11.

11        (3)    The motion to extend certain deadlines, docket no. 64, brought by Claunch,

12   3BA International, and TenMain is STRICKEN as moot.

13        (4)    Because the Second Amended Complaint contains no claim against either

14   Spokane Slam LLC or Destination Ten, the Clerk is DIRECTED to terminate Spokane

15   Slam LLC and Destination Ten as defendants, effective nunc pro tunc to the date that the

16   Second Amended Complaint was filed, _i.e._, December 3, 2013.

17        (5)    With regard to defendants Julie (Juli M.) Koentopp, Gayland Hammack,

18   Infinity Plus Investments LLC, and 3BA Management Holdings, LLC,[12] plaintiffs are

19   _____

20   [12] Hammack and Koentopp are alleged to be husband and wife.  2d Am. Compl. at ¶ 19 (docket no. 46).
     According to the Nevada Secretary of State, Infinity Plus Investments LLC is an active business entity for

21   which Koentopp is the registered agent, and Hammack is the registered agent for 3BA Management
     Holdings, LLC, which is in "revoked" status, its business license having expired on November 30, 2011.

22   _See_ http://nvsos.gov/sosentitysearch/corpsearch.aspx.  Because these defendants may be served within the
     United States, the 120-day deadline set forth in Federal Rule of Civil Procedure 4(m) applies.

23

ORDER - 20

1  DIRECTED to show cause within fourteen (14) days of the date of this Order why the

2  claims against such defendants should not be dismissed without prejudice for failure to

3  effect timely service.  *See* Fed. R. Civ. P. 4(m).

4       IT IS SO ORDERED.

5       Dated this 12th day of June, 2014.

6

7

8       Thomas S. Zilly
        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 21